STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-818

BETTY JEAN HARGROVE, INDIVIDUALLY AND AS NATURAL TUTRIX
OF JESSICA BANKS

VERSUS

MISSOURI PACIFIC RAILROAD CO., ET AL.

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-129-97
HONORABLE WENDELL R. MILLER, DISTRICT COURT JUDGE

\*\*\*\*\*\*\*\*\*\*
ULYSSES GENE THIBODEAUX
JUDGE
\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Oswald A. Decuir, and Jimmie C. Peters, Judges.

REVERSED IN PART, AFFIRMED IN PART AND REMANDED FOR TRIAL ON THE MERITS.

**Elizabeth Sheridan Hardy**
**Thomas & Hardy**
**2380 Lake St.**
**Lake Charles, LA 70601**
**Telephone: (337) 433-4903**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Betty Jean Hargrove**

**Sera Hearn Russell, III**
**P. O. Box 53866**
**Lafayette, LA 70505-3866**
**Telephone: (337) 237-7171**
**COUNSEL FOR:**
    **Appellee - Ricky Haley**
**John Edmund McElligott, Jr.**

**Davidson, Meaux, Sonnier & McElligott**
**P. O. Box 2908**
**Lafayette, LA 70502-2908**
**Telephone:  (337) 237-1660**
**COUNSEL FOR:**
    **Defendants/Appellees - Southern Pacific Transportation Company, Tommy Comeaux, Union Pacific Railroad Company, Missouri Pacific Railroad Company, and Tommy Comeaux**

**Thomas Joseph Solari**
**Woodley, Williams, Boudreau, Norman, Brown & Doyle**
**P. O. Box 3731**
**Lake Charles, LA 70602-3731**
**Telephone:  (337) 433-6328**
**COUNSEL FOR:**
    **Defendant/Appellee - Progressive Security Insurance Company**

**LaVon Denise Raymond**
**Bureau of Legal Services**
**P. O. Box 3836**
**Baton Rouge, LA 70821-3836**
**Telephone:  (225) 342-3425**
**COUNSEL FOR:**
    **Defendant/Appellee - State of Louisiana, Department of Health & Hospitals**

**Thomas E. Townsley**
**711 Pujo Street**
**Lake Charles, LA 70601**
**Telephone:  (337) 430-0994**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Betty Jean Hargrove**

THIBODEAUX, Judge.

This appeal arises out of an automobile/train accident which occurred at the intersection of Cary Avenue and Union Pacific Railroad Company's (Union Pacific) mainline track in Jennings, Louisiana. On September 26, 1996, a vehicle operated by Ricky J. Haley (Haley), collided with a Union Pacific train. Betty Jean Hargrove, individually and as natural tutrix of Jessica Banks, who were passengers in the Haley vehicle, filed suit for personal injuries against both Haley and Union Pacific. One of their claims is that the warning devices at the crossing were inadequate and that Union Pacific should be held liable. Union Pacific countered that the crossing warnings and signage were installed pursuant to a federally-funded project and, therefore, any state law claims that the plaintiffs have with respect to inadequate warning devices at the crossing are preempted by federal law. Union Pacific filed a motion for partial summary judgment and motion in *limine* requesting that the trial court dismiss the plaintiffs' claims regarding inadequate railroad crossing warning signals and to preclude the plaintiffs from addressing any issues with respect to the crossing signals at trial.

The trial court concluded that the project to install the advance warning signs at the Cary Avenue railroad crossing in Jennings, Louisiana, used federal funds and, therefore, any state claims against the railroad with respect to the inadequacy of the signage was preempted by federal law. Therefore, the trial court granted Union Pacific's motions for summary judgment and in *limine*. The plaintiffs now appeal. For the reasons stated below, we reverse the summary judgment granted by the trial court, affirm the trial court judgment on the use of documents relating to highway safety information pursuant to 23 U.S.C. § 409, and remand for trial on the merits.

1

# I.

## ISSUES

We shall consider:

(1)  whether the trial court erred in finding that Union Pacific met its burden of proving that federal law preempted state law in this railroad crossing collision case; and,

(2)  whether 23 U.S.C. § 409 creates a privilege which prohibited Union Pacific from introducing documents related to highway safety information to show the source of funds used to install warning signage at a railroad crossing.

# II.

## LAW AND DISCUSSION

### *Federal Railroad Preemption Requirements Under 23 C.F.R. §§ 646.214(b)(3) and (4)*

Recently, the Supreme Court in *Norfolk Southern Ry. Co. v. Shanklin,* 529 U.S. 344, 348, 120 S.Ct. 1467, 1471 (2000), explained the enactment of the Federal Railroad Safety Act (FRSA) as follows:

> In 1970, Congress enacted the . . . FRSA "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA grants the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety," § 20134(a). The FRSA also contains an express pre-emption provision, which states:
>
> > "Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement." § 20106.

The court further explained the purpose of the enactment of the Highway Safety Act of 1973, § 203, which created the Federal Railway-Highway Crossings Program (Crossings Program) at issue in the present case:

> [The Crossings Program] makes funds available to States for the "cost of construction of projects for the elimination of hazards of railway-highway crossings." § 130(a).

*Shanklin,* 120 S.Ct. at 1471.

The regulations implementing the Crossings Program which was promulgated by the Secretary through the Federal Highway Administration (FHWA) at issue in this case are 23 C.F.R. §§ 646.214(b)(3) and (4). These regulations address the adequacy of warning devices installed under the Crossings Program.[1]

At the time of the accident, the Cary Avenue crossing was equipped with advance warning signs and an oversized stop sign. The plaintiffs assert that this signage was inadequate and brought personal injury claims based on Louisiana law.

---

[1]Sections 646.214(b)(3) and (4) provide in full:

(3)(I)  Adequate warning devices, under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:

(A)  Multiple main line railroad tracks.

(B)  Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

(C)  High Speed train operation combined with limited sight distance at either single or multiple track crossings.

(D)  A combination of high speeds and moderately high volumes of highway and railroad traffic.

(E)  Either a high volume or vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

(F)  A diagnostic team recommends them.

(ii)  In Individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.

(4)  For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.

3

Union Pacific urges that the plaintiffs' state law claims are preempted. The *Shanklin* decision dealt with the State of Tennessee's installation of warning devices at a railroad crossing and preemption of state law. The Supreme Court concluded:

> Sections 646.214(b)(3) and (4) "cover the subject matter" of the adequacy of warning devices installed with the participation of federal funds. As a result, the FRSA pre-empts respondent's state tort claim that the advance warning signs and reflectorized crossbucks installed at the . . . crossing were inadequate. Because the TDOT used federal funds for the signs' installation, §§ 646.214(b)(3) and (4) governed the selection and installation of the devices. And because the TDOT determined that warning devices other than automatic gates and flashing lights were appropriate, its decision was subject to the approval of the FHWA. *Once the FHWA approved the project and the signs were installed using federal funds, the federal standard for adequacy displaced Tennessee . . . law addressing the same subject, thereby pre-empting respondent's claim.*

*Shanklin*, 120 S.Ct. at 1477 (emphasis added).

Guided by the above principles, it is clear that if federal funds were used to install warning devices at the Cary Avenue crossing, then §§ 646.214(b)(3) and (4) governed the selection of those devices. Thus, state laws regarding the adequacy of those devices are preempted by federal law. In the present case, since the warning devices, other than automatic gates and flashing lights, were present at the Cary Avenue crossing, approval of the project by the FHWA was necessary and "[o]nce the FHWA approved the project and the warning signs were installed with federal funds, the federal standard for adequacy displaced [Louisiana law] addressing the same subject, thereby preempting [Plaintiffs'] claim." *Shanklin*, 120 S.Ct. at 1477. Thus, in this case, it is not the *mere* source of funding of a crossing project that is the determinant of whether state law is preempted by federal regulations regarding the adequacy of railroad crossing warning devices; rather, it is *also* whether the warning

4

signs used were approved by the FHWA. With this in mind, we turn our attention to whether the trial court's grant of summary judgment was proper.

## *Summary Judgment*

In Louisiana, summary judgment is now favored and it shall be used to secure the just, speedy, and inexpensive determination of all actions, except those specifically excluded in La.Code Civ.P. art. 969. La.Code Civ.P. art. 966(A)(2). A summary judgment shall be rendered if the pleadings, depositions, interrogatory responses, and admissions, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Material facts are those that have the potential to insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of a legal dispute. *Rambo v. Walker,* 96-2538 (La.App. 1 Cir. 11/7/97), 704 So.2d 30. Appellate courts review summary judgments *de novo* applying the same criteria as the trial court to determine whether summary judgment is appropriate. *Schroeder v. Bd. of Sup'rs,* 591 So.2d 342 (La.1991).

Despite the legislative mandate now favoring summary judgments, "factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, all allegations of the party opposing the motion must be taken as true, and all doubt must be resolved in his favor." *Independent Fire Ins. Co. v. Sunbeam Corp.,* 99-2181, 99-2257, pp. 16-17 (La. 2/29/00), 755 So.2d 226, 236. Therefore, the party moving for summary judgment has the burden of affirmatively showing absence of genuine issue of material fact and any doubt as to whether the moving party has met that burden should be resolved against granting the motion. *Bradford v. Louisiana Downs, Inc.,* 606 So.2d 1370 (La.App. 2 Cir. 1992). Thus, according to the prior jurisprudence of this court and of others, summary

judgment is not appropriate in cases where questions of subjective facts such as motive, intent, malice, good faith and/or knowledge will determine the outcome. Nor does the likelihood that a party will prevail on the merits constitute a basis for granting a motion for summary judgment. *Claiborne v. Conagra, Inc.,* 96-482 (La.App. 3 Cir. 10/30/96), 682 So.2d 851.

A hearing was held regarding Union Pacific's federal preemption claim at which both Union Pacific and the plaintiffs presented exhibits. Following a review of the exhibits, the trial court determined that Union Pacific proved the expenditure of federal funds at the Cary Avenue crossing so as to support a claim of federal preemption. We disagree with the trial court's conclusions.

The principles of summary judgment are clear that the burden to prove the non-existence of material factual issues is on the party moving for summary judgment. In this case, it is Union Pacific. To support its motion, Union Pacific presented voluminous documents from the files of the Louisiana Department of Transportation and Development (DOTD) as well as the affidavit of Lester LeBlanc, a District Construction Engineer in the DOTD's district 07 office. A thorough review of the DOTD documents reveals merely that a federal grant to fund the Cary Avenue crossing project was submitted. Although the affidavit of Lester LeBlanc states that the Cary Avenue crossing project was implemented "pursuant to and as part of the Federal Railroad Safety Program," there is nothing to show that any federal money was used to install warning devices specifically at the Cary Avenue crossing. Further, the documents do not reveal whether the warning devices used at the Cary Avenue crossing, project number 737-04-14, were ever approved by the federal government pursuant to its Crossings Program. Thus, even if during the installation of the warning devices at the Cary Avenue crossing a federal funds grant was under consideration,

6

it is unclear from the evidence presented whether any federal funds were utilized to pay for the work done at that particular crossing.

*Shanklin* makes it clear that state tort claims are preempted when warning devices at railroad crossings are installed with the participation of federal funds and, in some instances, the approval of the FHWA. However, the evidence presented by the defendants does not support an unequivocal conclusion that the warning devices used at the Cary Avenue crossing in Jennings, Louisiana was installed with federal funds or approved by the FHWA. In the absence of such proof, we cannot say that the plaintiffs' state law negligence claims are preempted by federal law at this juncture of the proceedings. Summary judgment was, therefore, inappropriately granted.

### 23 U.S.C.A. § 409 Privilege

Although we have determined that the trial court erred in granting Union Pacific's motion for summary judgment on the basis that the plaintiffs' state law claims are preempted by federal law, we will address the plaintiffs' argument that the documents used by Union Pacific to support its motion should not have been considered by the trial court pursuant to 23 U.S.C.A. § 409. That statute provides:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying evaluating, or planning the safety enhancement of . . . railway-highway crossings, . . . or for the purpose of developing any highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceedings or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

In *Palacios v. Louisiana & Delta R.R. Inc.*, 98-2932, p. 6 (La. 7/2/99), 740 So.2d 95, 98, the Louisiana State Supreme Court explained:

7

[C]ourts throughout the nation have surmised that section 409 was enacted to encourage active evaluation of highway and railway safety hazards. We have previously held that, by enacting section 409, Congress intended to "[f]oster the free flow of safety-related information by precluding the possibility that such information later would be admissible in civil suits. The interest to be served by such legislation is to obtain information with regard to the safety of roadways free from the fear of future tort actions." *Reichert*, p. 4, [96-1419 (La. 5/20/97), 694 So.2d 193] 694 So.2d at 197, quoting *Perkins v. Ohio Dept. of Transp.*, 65 Ohio App.3d 487, 584 N.E.2d 794 (1989). See also, *Fry v. Southern Pacific Transp. Co.*, 30,540 (La.App. 2 Cir. 6/24/98), 715 So.2d 632. The statute serves to "facilitate candor in administrative evaluations of highway safety hazards." *Stephens v. Town of Jonesboro*, 25,715, p. 6-7 (La.App. 2 Cir. 8/19/94), 642 So.2d 274, 279, quoting *Robertson v. Union Pacific Railroad Co.*, 954 F.2d 1433, 1435 (8th Cir.1992) and *Duncan v. Union Pacific Railroad Co.*, 790 P.2d 595, 597 (Utah Ct.App.1990), *aff'd* 842 P.2d 832 (Utah 1992). Additionally, the statute has been considered to prohibit the use of federally required record-keeping from being used as a tool in private litigation. *Stephens*, *supra* citing *Robertson, supra.* See also, *Harrison v. Burlington Northern Railroad Co.*, 965 F.2d 155, 156 n. 3 (7th Cir.1992); *Light v. State*, 149 Misc.2d 75, 560 N.Y.S.2d 962, 965 (N.Y.Ct.Cl.1990); and *Taylor v. St. Louis Southwestern Railway Co.*, 746 F.Supp. 50, 54 (D. Kan. 1990).

In *Kitts v. Norfolk & Western Railroad Co.*, 152 F.R.D. 78 (S.D. W.Va. 1993), the court faced the issue of whether 23 U.S.C.A. § 409 should be liberally or strictly construed. After stating the general principle that "the public . . . has a right to every man's evidence, except for those persons protected by a constitutional, common-law, or statutory privilege," *Kitts*, 152 F.R.D. at 80, *quoting*, *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090 (1974), the *Kitts* court concluded that because 23 U.S.C.A. § 409 deprives factfinders of some relevant evidence, it should be strictly construed to accord protection for documents and data prepared for safety purposes. However, a strict construction interpretation should not apply to documents compiled for some other purpose, even if the contents of those other documents become a part of a safety enhancement program or project.

The reasoning expressed in *Kitts* reveals that it is the purpose for which the documents were compiled and/or prepared that determines whether the privilege of 23 U.S.C.A. § 409 attaches to those documents. In *Shanklin*, the introduction of the documents, similar to those in the present case were not barred from discovery or admission by the provisions of Section 409 because those documents were compiled or collected for the purpose of obtaining approval from the Secretary of Transportation of particular warning devices at the crossing as opposed to safety enhancement purposes. The *Palacios* court set out four criteria for determining when the protection offered by Section 409 will apply to certain documents:

(1)     reports, surveys, schedules, lists or data,

(2)     compiled or collected,

(3)     for the purpose of identifying, evaluating, or planning the safety enhancement of . . . railway-highway crossings,

(4)     pursuant to  23 U.S.C. § 130.

*Palacios*, 740 So.2d at 99. Thus, as it pertains to the present case, if any of these four factors are absent, the protections afforded by Section 409 are inapplicable regardless of whether it is the defendant or plaintiff who wishes to use the documents.

Factor number three is relevant here. If the documents were compiled or collected for the purpose of obtaining approval of the crossing project at the Cary Avenue crossing, then the documents are not protected from discovery or admission into evidence by Section 409. However, if the documents were compiled or collected for safety enhancement purposes, Section 409 protects its discovery and admission. In the present case, it appears that the documents were compiled and used by Union Pacific to show compliance with 23 C.F.R. §§ 646.214(b)(3) and (4). Thus, we cannot say that the trial court improperly allowed Union Pacific to use the documents to support its summary judgment motion.

9

IV.

**<u>CONCLUSION</u>**

For the reasons above, the judgment of the trial court granting Union Pacific's motion for summary judgment and motion in *limine* is reversed and set aside. Costs of this appeal are assessed to the defendant, Union Pacific.

**REVERSED IN PART, AFFIRMED IN PART AND REMANDED FOR TRIAL ON THE MERITS.**